Good morning, Your Honors. My name is Michael Myrick, and I represent Jerome Mancuso. Mr. Mancuso was convicted of one count of possession with intent to distribute cocaine, one count of distribution of cocaine, two counts of maintaining a premises, one being his residence and the other his office, for the purpose of using and distributing cocaine. Mr. Mancuso's appeal in this case focuses on what he perceives to be the unfairness of the process, the unfairness of the process from the beginning for the failure of the district court to correct the deficiencies in the indictment to the pretrial rulings in the indictment and continuing until the sentencing in which he received 16 months in Federal prison. As of today, he has served about almost 10 months of that sentence. And there are some forfeiture issues on cross-appeal. That's correct. And so, Your Honor, to begin with, all of the allegations he was convicted on four counts, he was acquitted on a fifth count. All of the four counts upon which he was convicted suffered from a common deficiency, and that is duplicity. And the primary prohibition against duplicity is to prevent a situation where a defendant may be convicted by a jury that is not unanimous as to the particular crime charged. And this is the common thread that runs through all four of those charges, because the indictment, as drafted by the government in this case, alleged a seven-and-a-half year period. There are no conspiracy charges. These are all substantive counts. Alleged a seven-and-a-half year period of continuous possession with intent to distribute, continuous distribution, continually maintaining a residence for the purpose of use in distribution cocaine. The government then proceeded to use nine different witnesses to give testimony about the elements of those crimes. The problem is that because it used these different witnesses, and the Court recognized when this was raised in pretrial motions, that there are two ways of dealing with You can require the government to elect the actions on which they rely to prove the elements, or you can give the jury a specific unanimity instruction and tell them that they must be unanimous about what it is they agree to that forms the basis that meets the elements for the crime charge. But when it came time to do that and the defense made the motion for that, both of those motions were denied by the district court. And so today, I don't know whether the jury unanimously believed witness 1, 2, and 3, or some of the other jurors believed witnesses 4, 5, and 6, or whether none of them jointly together believed any of the witnesses. And that's the problem. Well, with regard to count 1, which is possession with intent to distribute, what is it you contend the jury had to commonly agree upon? How narrow did the focus have to be? Did they have to commonly agree upon not only there was they had to agree upon possession, they had to agree upon intent to distribute, did they have to agree upon actual distribution on any given date? Not for count 1. So I'm not sure I understand what the problem is with count 1. I understand at least the theory of the problem with count 2, but I don't understand it as to count 1. That they had to believe that there was an intent to distribute. That doesn't require agreement upon distribution at any particular time, because you can demonstrate an intent to distribute, would seem to me logically, if you – if each of the jurors decided he did actually distribute at some point in time, which is the inference I draw from the verdict, doesn't that satisfy what they have to commonly agree upon for count 1? I mean, the problem is complicated by the fact that count 1 and count 2 are multiplicitous, too, because you have to possess, in order to distribute, you have to possess. For count 1, you can have possession with intent to distribute without proof of actual distribution. You can. And for count 2, you have to prove actual distribution. Right. For count 1, you have to prove specific intent, which can be proven by action, but it could be proven in other ways, too. So I don't know that it's the case that each of these counts is entirely subsumed in the other. That is, each appears to have an element that isn't included within the other crime. There's obvious strong overlap, and indeed, the sentencing guidelines and the sentencing here recognizes the overlap. We don't actually treat these as two entirely different criminal offenses. But I don't know how that really changes anything with regard to count 1. I understand the theory of the argument for count 2, but even the multiplicity problem doesn't really change things for count 1, does it? Well, because he received two separate punishments for something based on the same statute and identical evidence, I think it does. What do you mean by two separate punishments? He was sentenced to 16 months on count 1. He was sentenced to 16 months on count 2. They were sentenced concurrently, but there's still two separate felony convictions. But the sentencing takes into account the fact that it's not like entirely separate episodes, and so you're certainly free to challenge count 2. But the multiplicity problem, which you turn to in response to my question, doesn't really change my question, which is what's the problem starting with count 1? What's the problem there? I don't know what it is the jurors couldn't be perceived as having commonly agreed upon what they had to agree to for the sake of convicting on count 1. My concern there is whether they – I get your point in the sense that their general verdict would seem to indicate that they believe that at some point he possessed cocaine with the intent to distribute it. And your earlier argument, which had to do with maybe they didn't all agree upon what – I don't think that matters for count 1. That's count 1. Okay. Maybe on that issue. I mean, the statute of limitations problems, the multiplicity problems, all of those still apply to count 1. The fact that it ranges for a seven-and-a-half-year period is a problem for count 1. There are a whole host of deficiencies in count 1 that don't rely on duplicity alone. So I would argue that even if count 1 stands because on the issue of duplicity, it does not stand on the issue of statute of limitations. It does not stand on the issue of duplicity. And the other thing I would say is that there is no instruction to the jury with regard to the conviction having to be based upon activity within the limitations period. Right. And it's pretty well established that you can admit evidence for – regarding conduct outside the limitations period. There needs to be a proper instruction. Right. So what's the issue with regard to the limitations period in count 1? It's – first of all, there is an issue, I think, of when you look at the testimony, I can't tell from the testimony sometimes whether the witness is talking about things that are outside the period of statute of limitations or within that period. I don't know, because the question doesn't – I mean, the questioner doesn't go to clarify it. You have – How about cross-examination? But is it the duty of the defense counsel to clarify that? It's a duty of the defense counsel to object if the question is ambiguous or vague. Did he do so? No. No. However, and the idea that you – and the idea that you can cure this problem with a jury instruction that says that beginning on some date in August, I think, of 2005, you can't consider as evidence of guilt anything prior to that. And yet turn around and tell them in the next – the very next instruction, the defendant is charged only with what's in the indictment. Well, what's in the indictment includes the period 2002 to 2009. And then all of the elemental instructions include the period 2002 to 2009. Is that not confusing to the jury? In my opinion, it is. That's – and that's the problem I have, that you simply cannot cure a statute of limitations problems with rules of evidence or evidentiary rulings during trial and with jury instructions because statutes of limitation are not rules of evidence. One has nothing to do with the other. And the further problem is that the whole policy behind statutes of limitations is to enable a defendant to not have to defend against stale charges, against charges that may be where the witness's memory is obscured by the passage of time. That doesn't happen when you simply allow all of this to come in and then try to cure it with a jury instruction. It doesn't work. The defense counsel objected to the deficient jury instructions? The defense counsel objected to the jury instructions generally. And as to the – and raised both in the Rule 29 motion, raised the issues again of statute of limitations, of duplicity, of multiplicity. All of those were once again raised in the Rule 29 motion and denied. So – But what about specific instructions? And specifically asked for a specific unanimity instruction that was denied. Specifically asked for an election by the government that was denied. With that, Your Honor, I would ask to reserve, because I know that there's also a cross-appeal issue, so if I could reserve the remainder of my time, I would appreciate it.  Thank you, Your Honor. May it please the Court. Bishop Grewal on behalf of the United States. The three issues I'd like to address before the Court this morning are the duplicity unanimity issue, the Shetler, the challenge to the drug premises jury instruction under Shetler, and finally, our forfeiture count. Starting with the duplicity unanimity issue, I think the Pisano case that's actually cited in the Defendant's reply brief makes clear that there's no duplicity problem with any of these. Duplicity is when we're charging separate offenses, such as if we charge the possession with intent to distribute and the distribution count all in one count. But Pisano also suggests that there could be a unanimity problem when you charge several instances of the same offense within that count. That wouldn't be a duplicity problem, but maybe you might need a specific unanimity instruction. I think that's, I guess I don't want to go down the linguistic road too far. But here I want to concentrate on count two, because I confess I have some difficulty understanding separate episodes of actual distribution and distribution being the crime as being just one big happy offense. That's true. And the risk of jurors deciding, well, this episode and this episode and this episode without being clear that they've got a common understanding with regard to any particular episode is there. Now, are you saying the jurors don't have to agree on a particular episode, or why isn't that a problem? Sure. So I think that's the problem that Paisano's initially concerned with, is that there are these separate instances such as in the count two. Can you point to that name of the case again? Paisano, I think P-A-Y-S-E-N-O, it's cited in the defendant's reply brief. I think the difference between Paisano and the situation here is that we actually said the we charged continuing in the offense, and I think the Berardi case from the Seventh Circuit suggests. But distribution is not a continuing offense, is it? The legislature. Each delivery is a different offense, is it not? The legislature has chosen to use a prosecutorial unit of one act, each distribution, as Your Honor says. So the legislature, the way the statute's been written, it is, as you say, not a continuing offense. Berardi suggests, however, that even when you have offenses that are not continuing offenses, you can charge them as a continuing course of conduct. And that's what they did in Berardi in their indictment. They said continuing, and so that you can bring these different distributions together, then, as one single series. Kennedy, that's a 30-year-old Seventh Circuit decision. It's not to say it's not to be paid attention to, but it suggests how unusual this is. I confess I don't pay that close attention, but I don't recall seeing this kind of conduct being charged as a single count. Now, it may not be bad for a defendant. I mean, he may be better off having one count rather than a half dozen. But it does raise a question of what is it the jurors have to agree to. And in this case, as I think Berardi and I would suggest, our Jackson case from the Seventh Circuit, again, but a more recent one suggests, that they have to agree on that there's basically this continuing course of conduct. And Jackson relies on another Seventh Circuit case, Buckmeyer, which relies on Berardi saying these same things. And basically, they're suggesting that it's hard to draw these lines, and certainly Congress has chosen to draw a line here, but that there's a reason to give prosecutors discretion, for one reason being the one that Your Honor has just suggested, that there is a benefit to the defendant, and that we don't end up charging 30 or 40 counts that make him look much worse than he might be to the jury. And he gets a benefit in terms of double jeopardy in that all of these are now covered in the Seventh Circuit. Kennedy. That comes right back to the question, what do the jurors have to agree to? That there's a continuing course of conduct. So if they of distribution. But that doesn't mean that this is the crime here is distribution. And that doesn't mean they actually have to agree. I take it your position is they don't have to agree to any particular episode of distribution. I mean, different jurors may focus on different witnesses talking about different episodes. And our position would be that when the government chooses to take on this extra burden of charging it as a continuing course of conduct, that they would have to agree that there is this continuing course of conduct. So they wouldn't have to agree on a particular distribution, but they'd have to agree that there's distribution going on throughout the time period. But you don't charge a continuing course of conduct. You charge deliveries, distributions of over 500 grams of cocaine. Now, the way I read this is that it's perfectly consistent with one act where he distributes 500 grams of cocaine. And in Count II, we say we suggest from the starting period, continuing thereafter to the ending period, which is the same thing that happened in Berardi. It just said continuing. It didn't say, use the words continuing course of conduct. It just said it was continuing. Well, there could have been a course of conduct of assembling 500 grams of cocaine. Right? A continuing course of conduct, drive, assemble, assemble, and then deliver 500 grams of cocaine. That's perfectly consistent with the language you've used, one distribution. So I can see that reading of the indictment as well, Your Honor, but I think it's broad enough to encompass the reading we've given. If the Court disagrees, however, and they think that then the proper course here would be to send it back to the district court to simply amend the judgment to dismiss Count II, if you feel the specific unanimity instruction is required to make the jury unanimous on Count II. Kennedy, I'm not saying this is what we're going to do, but if we did that, what would that do to the sentence? I don't believe it would change the sentence here, Your Honor. The Court made it rather clear that what it wanted to do was give him a time period of 16 months here, sentenced him concurrently on those different counts. So the distribution count would simply go away. We'd still have the 16-month count on the other charges. I don't think it would change the sentence at all. And the guideline. Kennedy, should the Court be given a chance to change the sentence? In other words, we remand with instructions to dismiss the second count and, in the Court's discretion, to reconsider the sentence? I don't think that's necessary, because the way the sentence is gotten at here is the guidelines take it on the total drug amount charged, and the drug amount charged is not going to change. That's the guideline calculation wouldn't change based on that, because the drugs underlie each of those three different accounts. So I don't think that's necessary. Do you want to talk about the counts, counts 3 and 4? With respect to Shetlar? Yes. Certainly. It's our position that those counts do not violate or are not plainly erroneous under Shetlar. While they – while counts – What was the issue in Shetlar? It seems to me Shetlar is a different case. In Shetlar, they're dealing with the same statute, 856, drug premises. And he's dealing with manufacturing methamphetamine as opposed to distributing, although the drug premises is – Well, when he's doing Shetlar, it's about whether there was adequate evidence. Here the question is somewhat different. It seems to me the question is whether, if instructed properly based on the subsequent decision of our court, would the jury have reached the same verdict. And I can cheerfully say, well, sure, evidence was adequate for them to do so. But I don't know that I can say that's the same as harmless error. How do I – how do I have confidence the jury would have reached the same verdict, particularly in a context where, I have to say, applying the crack house statute to a dentist's office or the resident of a dental professional, no, it's not – it's not what I really visualize as a crack house. So can I be sure that the jury properly convicted or properly instructed would have convicted? Well, I guess let me answer that in two parts. The – if this Court doesn't believe that Shetlar is on point, that makes the government very happy because it's unclear how it could at all be plainly erroneous under Shetlar that the jury instruction that was given here. I think what the defendant was arguing – Well, what I'm saying is not on point, is what you're trying to take from Shetlar is the determination that there was adequate evidence, that the – I mean, the defendant there was asking for dismissal. And the Court said, well, we're not going to dismiss because there was enough evidence the jury could have convicted under a proper instruction. In this case, the question is whether the jury would have convicted under a proper instruction or would it have been harmless – is it harmless error because we can have confidence the jury would have convicted? I think that's a different question than Shetlar answered. I think Shetlar addressed two questions. One was whether – what the jury instruction should say, and two was the evidence sufficient to meet that jury instruction. And so on the first question – and the first question is what I believe the defendant has challenged, whether this was the proper jury instruction. I don't believe there's been a sufficiency challenge in his briefing at all. No, I think sufficiency speaks to whether it's harmless error. I mean, I'm taking as a given that, okay, subsequent Ninth Circuit law says this instruction was defective. Nobody's fault, but Ninth Circuit said a different instruction is required. So then I pass to the question of was it harmless error, and I'm not sure that Shetlar gives me any guidance on that. Sure. Without giving up that prong 2 is met, because we think it's an error of degree not kind, which the Supreme Court's recently said is not plainly erroneous. On count 3, so is it harmless or not, we think there was enough evidence here to meet the – one of the primary principle purposes test, because in Shetlar, all that they said, all the – the only evidence they had to meet that test was that his daughter said parties went on in the garage. Well, suppose I accept that proposition. What do I do with that? Because the question put to me isn't whether there was enough evidence to meet what should have been the proper instruction. As I understand the question before us is whether not giving the subsequently proper instruction was harmless error. It's not whether the evidence was adequate for me to say, yes, they could have reached that verdict. Would they have reached that verdict? And under the plain errors prong 3, it's the defendant's burden to show that it would have caused some harm. It's not our burden to show that it would have been harmless error. We believe that it didn't – wouldn't have caused any harm, because Shetlar says as long as you've got nonresidents in the house using, you're not going to get into this incidental use problem that we have. And here we had testimony from seven different witnesses who were nonresidents of his home that were using in that home. Tim – Tim Loudon had it distributed to him in that home. Gary Kisthardt, Blair Elliott, Lawrence Zarate, Jennifer Conan, John Bonner. The counsel, do you think that the evidence, if seen by the jury under proper instruction, that the house had to be used as the primary or principal place for the distribution of drugs would have found that over 9 years, 7 witnesses taking drugs in the house, the house was used primarily or principally for the purpose of distribution of drugs? It doesn't have to be the primary or principal use. The courts have agreed that it doesn't have to be the purpose. The instruction is that it has to be one of the primary or principal uses. And I think that when you consider that there are a limited number of uses to the house and the primary or principal means most important and the difference between one of the most important uses versus significant, which is important, I don't think there's a difference between the two, which I think Shetler realized when he said to the extent there's a meaningful difference, it was realizing that there might not be a meaningful difference between the two standards. So I think that's why neither instruction would have been met. Kennedy, instructing, if it's a significant use of the house, which was the instruction given, and it has to be a primary or principal use of the house? Do I think there's a difference between this? That language is, do you think there's a difference there? You might be able to argue that. In the case of a house, the difference between a significant use and one of the primary or principal uses, I think you might be able to make an argument on that. I don't think there is a difference between the two, though. I think the two are the same. But that then also still takes us to we have to meet the fourth prong, and that's that this error has to affect the fairness, integrity, and the public reputation judicial proceedings. The significant purpose instruction is still used by the Fifth Circuit, the Sixth Circuit, and the Eighth Circuit. This circuit chose to join the Tenth Circuit in applying the other standard. For this Court to say that the standard used by those three other circuits leads to unfair proceedings that lack integrity and that are negatively affecting public reputation, I think would be inappropriate. I think where you have a circuit split on an issue like this, you can't meet the fourth prong of the plain error test. And so for those reasons, we don't think that there's plain error here, and we don't think that even if this Court thought there was, that it should be reversed because it wouldn't meet the fourth prong. I'd like to turn finally to our forfeiture account very quickly. And the one clarification that I would make, two points I would like to make on that. First of all, Mr. Mancuso argues that there's a must that wasn't met here. And that's certainly true. The district court judge was required to look beforehand whether the into whether the defendant would like a jury to decide the forfeiture question. But Rule 52a also has a must, and that's where the rule doesn't affect substantial rights that should be disregarded. Here, we had a jury finding that drug use was a significant purpose of his house. Now, even if this Court thinks count three should go away because it thinks that we had to have a primary principle purpose instruction here and that it would be plainly erroneous, we would still get our forfeiture so long as count one is in place. And the reason for that is that count one establishes his drug activities, and the jury finding on count three establishes that at the very least his drug activities were a significant purpose of his house. We would submit that's enough to establish the nexus, which is the only question that the jury reaches between the property and the forfeiture. So we could still take that finding, even if this Court found that that finding is not sufficient to convict on count three, that finding is sufficient to still establish the nexus for the forfeiture here. Those are the issues that I wanted to just say.  And I'm just wondering, even if we throw out count three on instructional error, there should be forfeiture because of what? Because if count one is still in place, if you throw it out on the instructional error, that instructional error doesn't go to whether the jury found a significant purpose or not. It would just simply go to whether there was a primary or principle purpose. Right. And all that you need for forfeiture is a nexus between drug activities and the property. And a significant purpose would still establish that nexus for count one and for our forfeiture. And so we'd still have a jury finding that the error here would still be harmless in that sense. Roberts. What would the issue then be returned to the – I guess you're saying the jury has decided that – I understand the argument the jury hasn't decided anything inconsistent with forfeiture, but wouldn't it have to go back, since the jury wasn't actually given the question of forfeiture, wouldn't it have to go back to the district court to make that determination? I don't think so, because the only thing a jury decides is the nexus. That's the only thing they decide, is there a nexus or is there not a nexus under the rule. And they made that decision when they said that there was – that drug use was a significant purpose of the home. That decision was made. And so I don't think it needs to go back for that reason. Those were the issues I wanted to discuss. I'm out of time, but if the Court has any other questions, I'm happy to answer them. Thank you. Thank you. Mr. Robert. Thank you, Your Honor. The Court asked, if this went back, would it be the same sentence? And the government said, yes, it would be the same sentence because the drug amounts would still be the same. But as we challenge in the brief, the method that was used to calculate the drug amounts was improper. This circuit requires that in order to properly calculate the drug amounts, you have to establish, number one, by a preponderance that the government has to establish, by a preponderance of the evidence of what that amount was. Number two, it has to bear some sufficient indicia of reliability. And that, number three, the district court has to err on the side of caution. And look how they were calculated here. The probation department totaled up everything that the government said he acquired over 7-1⁄2 years and divided by 2. Now, how is that based on a preponderance of evidence? How is that based on a sufficient indicia of reliability? If that's an error, it's an error in your client's favor, isn't it? I mean, in effect, didn't the district judge half the amount of drugs that could be attributed to your client? If he had correctly, if they had correctly calculated it, the total amount actually distributed based on the government's expert was 8-1⁄4 grams over 7-1⁄2 years. That represents about 1-1⁄2 to 2 percent of the total amount acquired, depending on which number you use. The premise of that is that the only distribution he did was the distribution that was testified to specifically. Right. And that should be the only premise. But the government's argument, and the jury apparently found it, is that we had a continuing pattern or possession with intent to distribute. Is it safe to infer that he consumed everything else himself? Yes, unless the government proves it by a preponderance differently. Because if you add up the amounts over a period of 7-1⁄2 years, those are reasonably user amounts over a period of 7-1⁄2 years. And they only represent 1-1⁄2 to 2 percent of the total. So I just think that that error needs to be corrected if there's a resentencing on this issue. As to counts 3 and 4 and Shetler and the government's position that there's not really much of a difference between significant use and primary or principal use, obviously the Ninth Circuit felt there was a difference because they rejected one in favor of the other. That's my response to that. As to the forfeiture issue, I think that the forfeiture has to be based on something. And in this case, it's got to be based on count 3. And if count 3 goes away because the wrong standard was used, I don't think that the government can maintain. The wrong standard for forfeiture purposes. I mean, the government's argument is that the factual finding implicit in the conviction on count 3, the guilty verdict of the jury, satisfies all they have to satisfy for forfeiture. The requirement to instruct differently on that offense doesn't change the forfeiture standard. I disagree. I think that it's got to be based on a conviction and that without the conviction, you can't allege that you have the nexus. They sometimes have forfeiture actions standing alone without any criminal charges attached to them. But they didn't do this. They didn't pursue a civil action. And in this case, I don't think that that applies here. Thank you. Thank you. We thank both counsel for your helpful arguments. The case just argued is submitted. That concludes today's arguments and we are adjourned.
judges: Mahan, Clifton, Bea